ERNEST TEGLER, ADMINISTRATOR, APPELLANT, V. FARMERS UNION GAS & OIL COMPANY, APPELLEE.

FILED FEBRUARY 10, 1933. No. 28312.

*Benjamin J. Cunningham*, for appellant.

*Cleary, Suhr & Davis, contra.*

Heard before Goss, C. J., Dean, Good, Eberly, Day and Paine, JJ.

Goss, C. J.

This is an action for damages for alleged negligence causing the death of Juanita Tegler, four year old daughter of Ernest Tegler and Amanda Tegler. The suit is brought by Ernest Tegler, as administrator, against defendant corporation, a dealer engaged in buying and selling gasoline, kerosene and other oils. At the close of evidence offered by plaintiff and defendant the court directed a verdict for defendant.

The death of the child was caused by burning as a result of an explosion while the mother was filling an incubator lamp. On Saturday, April 19, 1930, the father had purchased three gallons of kerosene from Donald Miquez at Ovina, about two miles away, who ran a store and had a gasoline pump and a kerosene pump outside. Tegler himself got it at the kerosene pump at the instance of Miquez, who was busy in his store. He took it home in his can used for that purpose. On Sunday, without mishap, the mother filled from this can three lamps used to furnish heat for an incubator. This was done in a small room called the incubator room, next to the kitchen. Two of the lamps held hardly a quart each, but the third held about a half gallon. The lamps furnished heat to the incubator Sunday night and Monday.

On Monday afternoon about 5 the mother undertook to fill the two smaller lamps; the one of larger capacity did not need it. She set all three lamps in a row on the top of the incubator, which was 36 inches long. She left the large lamp burning. The child was close beside the mother, who had filled one of the smaller lamps and was filling the other, when, as the mother testified, she first "noticed a fire in the funnel," the room was filled with smoke and fire and Juanita's clothes caught fire. She was taken to a hospital and died the next day. The three-gallon can was wrecked, but the incubator lamps remained intact with kerosene still in them.

Defendant maintained storage tanks near the Burlington tracks at Grand Island, including one storage tank for kerosene with a capacity of about 12,000 gallons. It furnished petroleum products, including kerosene, delivered by truck, to Miquez, at Ovina, a few miles away, and to other retail dealers. Plaintiff claims Miquez was defendant's agent, but fails to point out the specific evidence from which this might be inferred. On the contrary, the evidence indicates that Miquez was a customer only, who bought his kerosene from defendant. It is shown by the evidence that all the kerosene bought by Miquez came from defendant's said tank at Grand Island.

All kerosene purchased by defendant from September 16, 1929, to April 21, 1930, the date of the accident, was traced. In that period defendant received from the refiner and unloaded into its kerosene tank four tank cars of kerosene, each car containing more than 8,000 gallons. This was all bought from Champlin Refining Company of Enid, Oklahoma, as kerosene and was so billed. The statute (Comp. St. 1929, secs. 66-301 to 66-317) puts all petroleum products as to tests and inspection, offered for sale in this state, under the state department of agriculture. Section 66-304, Comp. St. 1929, requires that illuminating oils offered for sale "shall not give a flash test below one-hundred twelve degrees Fahrenheit when tested by the oil tester known as the Foster apparatus."

This is a tort action. "It is a general rule that no cause of action in tort can arise from the breach of a duty existing by virtue of contract, except as between the parties thereto. Privity of contract is essential to the right of action. 20 R. C. L. 49, sec. 44." 42 A. L. R. 1249, stating the foregoing rule and the reasons therefor in the annotation, and suggesting a rule affording a basis for liability, not inconsistent with the present trend of the courts to liberalize rules of liability for negligent acts which result in injuries to third parties. Briefly sketched, that enlarged rule suggests a duty of inspection and the use of ordinary care to see that a manufactured article, which, if defective, is imminently dangerous to persons the manufacturer knows will come in contact therewith, is not put upon the market in that condition. There was not privity of contract or of dealing between the parties hereto, but plaintiff has brought himself by his pleadings under the liberalized rule above suggested that, if the kerosene was actually inherently or imminently dangerous by reason of its content, then defendant would be liable for negligence to the plaintiff, if such negligence was the proximate cause of the injury.

Plaintiff alleged that the flash test of the kerosene in question was below the requirement of statute, that the product was subject to explosion, was highly dangerous to be so used, and should not have been sold to plaintiff to be used in kerosene lamps; that defendant and its agents negligently sold plaintiff said kerosene, knowing it did not comply with said requirements, or that defendant and its agents could have known such fact by the use of ordinary diligence, but they failed to warn plaintiff the kerosene was highly explosive and dangerous and to inform plaintiff it did not comply with the statutory requirements.

The evidence shows that these cars of kerosene when received by defendant were all duly inspected and tested by the department of agriculture and all showed a flash test of 120 or more degrees. Each test was ended as

soon as it reached 120 without waiting to complete the test for higher temperatures. Defendant was furnished with official certificates of these tests. It had a right to rely upon them. There is a presumption that an official oil inspector did his duty and that oil inspected by him comes up to the test. *Pfarr v. Standard Oil Co.*, 165 Ia. **657.**

The next day after the accident to Juanita Tegler a sample was taken from the Miquez pump at Ovina. It showed a flash test of 140 degrees. All flash tests mentioned in this opinion, except those taken when defendant received the original consignments, were taken after the accident.

Besides the incubator lamps, the Teglers had four lamps used in other parts of the home for lighting purposes. One was a round burner lamp using kerosene and the others were lamps using gasoline. The kerosene lighting lamp was used only occasionally when they ran short of gasoline. Mrs. Tegler testified she filled this kerosene lamp Sunday night from the kerosene can and the family used it for lighting purposes as some of the gasoline lamps were out of order. She noticed the lamp "kept running high and had to turn it down several times." A week after the accident a sample was procured from a Tegler house lamp. It was tested officially and showed a flash test of 88 degrees. Another sample taken about a month after the accident from a can containing kerosene, testified to as purchased from Miquez by another customer, showed an official flash test of 110 degrees. The evidence tracing and identifying these samples as having been kept free from mixture is not satisfying.

The explosion happened on Monday. Mr. Tegler admitted that he continued to run the incubators for three or four days, using the same three lamps. He used up the kerosene left in the lamps at the time of the explosion, went to Ovina and secured one gallon out of the Miquez tank on Tuesday, two or three days later obtained four gallons from the same source, and continued thereafter

to get and use from the Miquez tank kerosene for his incubator lamps and for his house lamps. No lack of quality in this kerosene appeared in evidence.

We not only fail to find from the evidence that Miquez was an agent for defendant, but we fail to find therefrom that any officer, agent or employee of the defendant knew, or had any notice whatever to put him upon inquiry, of any defect in the quality of the kerosene purchased, sold and delivered by defendant. Defendant did what the statute required in procuring official tests and certificates thereof when it received and stored the kerosene. Until there is at least some evidence that the kerosene, while in the possession and control of defendant, became more volatile or contaminated so as to be below the statutory flash test, can it be said that defendant failed to exercise such a high degree of care as an ordinarily prudent person would have exercised, or failed to do anything that an ordinarily prudent person would have done to prevent the explosion and consequent damages to plaintiff's intestate?

Plaintiff claims, as a matter of law, that defendant as a dealer is responsible to the ultimate consumer for putting on the market an inherently dangerous article without due warning. This exception to the general rule limiting recovery to one in privity, which we have heretofore stated, is supported by cases cited by plaintiff in which the manufacturer or the dealer knew or should clearly have known of the danger and failed to give warning. While plaintiff pleaded that he purchased the kerosene from defendant, and the proofs show that it was purchased from Miquez, who was doing business on his own account, yet we are disposed to consider the petition, under the course of the trial, as raising the issue of liability of defendant to third parties. There is no inherent danger of explosion of kerosene, having a flash test of 120 degrees plus, when handled with ordinary care for the well-known use for which the product is intended. The proofs were insufficient to show any knowledge on the

part of defendant that the kerosene was below legal test while in its control or to show any notice that it was claimed, at any time before the accident, to be so. Therefore the rule is not applicable.

Errors were assigned relating to evidence, but they were not argued. We deem them abandoned.

The judgment of the district court is

AFFIRMED.