Marie M. Crandall, Appellee, v. Stop and Shop, Inc., Appellant.

Gen. No. 38,697.

Opinion filed February 9, 1937.

HINSHAW & CULBERTSON, of Chicago, for appellant; OSWELL G. TREADWAY, of Chicago, of counsel.

MURPHY O. TATE, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Marie M. Crandall brought an action to recover damages for personal injuries sustained while opening a glass jar containing fruit salad purchased from the defendant, Stop & Shop, Inc. The jury returned a verdict in her favor for $3,500, upon which judgment was entered, and this appeal followed.

The essential facts are undisputed and disclose that August 19, 1933, plaintiff, while shopping at defendant's store, purchased a jar of fruit preserves put up by G. B. Raffetto, Inc., of New York, as appears from the label on the container. The jar is of glass, is circular in form, about 4″ high and 2½″ in diameter. It contains a flat circular cover, also made of glass, which is held in place by a one-piece steel spring clamp, ¼″ wide and .018″ thick, so formed as to hold the cover in place by tension and fastened by means of lugs at either end which slip over a slight protrusion on the jar just beneath the cover.

About a week after the jar was purchased plaintiff had occasion to use the contents and proceeded to open

the jar by placing it on a cabinet table and, while holding the jar with her left hand, she placed the index finger of her right hand on the cover of the jar, but not on the spring, and with the thumb of her right hand released the lower edge of the lug on the left hand side of the jar. The spring clamp flew from the jar, striking her in the eye and causing severe injury. It appears from the evidence that plaintiff had never before purchased or opened a jar of this type, that she made no inquiry nor was she told how the jar should be opened, and that no written instructions of any kind accompanied the jar.

The case was tried and submitted to the jury on two theories. Par. 4 of the complaint charged negligence, and reads as follows:

"That the defendant knew, or in the exercise of ordinary care and caution would have known, that the said jar of fruit salad was unsafe, and that an attempt to open the same would result in the springing of the clamp used on said jar to keep the same securely sealed, to fly in the air and endanger the personal safety of the plaintiff, yet the defendant, well knowing the defective condition of said jar, did sell the same to the plaintiff without then and there warning the plaintiff of the said dangerous condition of said jar." In the course of the trial defendant made a motion to withdraw this paragraph from consideration of the jury on the ground that no negligence had been shown, but the court overruled the motion, and this is assigned as error. The law is well settled in Illinois, as well as in other jurisdictions, that where a plaintiff bases his cause of action on a negligent breach of duty which the defendant owes plaintiff, the burden is on the latter to prove the negligence charged. (*Sheffer v. Willoughby,* 163 Ill. 518, 522; *Ash v. Child's Dining Hall Co.,* 231 Mass. 86, 89; *Pitman v. Lynn Gas & Elec. Co.,* 241 Mass. 322, 324; *Bruckel v. J. Milhau's Son,* 102 N. Y. S.

395, 397; *Flaccomio v. Eysink,* 129 Md. 367, 374, and *Miller v. Svensson,* 189 Ill. App. 355, 356.)

The record here discloses that the jar and contents which plaintiff purchased had been on the market for a number of years, and had been sold not only by defendant but also by Marshall Field & Co., The Fair and other dealers in Chicago. There is no proof that any other accidents ever resulted from the use of this type of jar, or that defendant had any reason to anticipate trouble or danger in opening it. Therefore the charge "that the defendant knew, or in the exercise of ordinary care and caution would have known, that the said jar or fruit salad was unsafe," was not in anywise sustained by the evidence, and since no showing is made that defendant knew, or in the exercise of ordinary care and caution could have known, that the jar was unsafe, it logically follows that there was no occasion for warning plaintiff "of the said dangerous condition of said jar."

Under this paragraph of the complaint, plaintiff evidently proceeded on the theory that the jar was inherently dangerous, and the court assumed this to be true, as appears from its statement in response to defendant's motion for a directed verdict that "it was inherently dangerous." We find in defendant's brief numerous cases, decided in various jurisdictions including Illinois, holding that appliances which on their face appear to be far more dangerous than the spring clamp on this jar were held to be not inherently and imminently dangerous. One was the case of *Miller v. Sears, Roebuck & Co.,* 250 Ill. App. 340, where a toy pistol caused a spark to ignite a can of gasoline and burn plaintiff. It was there said that "while at most any innocent article might under some extraordinary circumstances injure a person, yet, this does not render the article itself inherently and imminently dan-

gerous." Another was a gas stove, involved in the case of *State v. Consolidated Gas etc., Co.,* 146 Md. 390.

In *Pitman v. Lynn Gas & Elec. Co.,* 241 Mass. 322, plaintiff was injured by a gas flat iron purchased from defendant, a utility company which did not manufacture the appliance but sold it to plaintiff, whose clothes caught fire while using the appliance, causing a severe injury. The court said that "there was however nothing inherently dangerous in the flat iron within the accepted meaning of the term and it did not come within the class of articles which are commonly recognized as dangerous to human life, even when used in connection with illuminating gas."

In *Talley v. Beever & Hindes,* 33 Tex. Civ. App. 675, a minor, aged 17, was injured while operating a pear burner manufactured by defendants. The appliance was operated by the use of gasoline, and was used for burning prickly pears on his father's ranch. While pumping air into the cylinder or tank containing gasoline the cylinder burst from pressure within and the gas expelled therefrom became ignited and burned plaintiff. In affirming a judgment for defendant the court approved the rule that one who deals with a thing which is inherently very dangerous owes to the public at large the duty of extreme caution, but stated that the machine in question was not a thing of that nature and that only the standard of ordinary care applied. In that case it was urged that the explosion was evidence of the defendant's negligence, but the court held that such presumption does not arise from the fact alone, citing several cases.

In *Peaslee-Gaulbert Co. v. McMath's Adm'r,* 148 Ky. 265, defendant was killed by the explosion of a can of "No. 1. T. Japan Dryer." A lighted candle had been placed next to the can from which the dryer was being poured when the explosion occurred. There was no label on the can indicating that the contents were

of an explosive nature, and evidence was adduced to show that varnishes of this kind were not dangerous unless brought into contact with a lighted flame. Judgment entered for plaintiff was reversed on appeal principally on the ground that "there is no evidence in the record that Peaslee-Gaulbert Company knew that this dryer was explosive or inherently or imminently dangerous, or at all dangerous if used with reasonable care, nor is there any evidence that they had ever heard of an accident caused by its ignition or explosion."

In *Tegler v. Farmers' Union Gas & Oil Co.,* 124 Neb. 336, an action was brought for causing the death of plaintiff's four-year-old daughter by burning as a result of an explosion while the mother was filling an incubator lamp with kerosene. Defendant was engaged in buying and selling gasoline, kerosene and other oils. The father had purchased a three-gallon can of kerosene from a retailer who had purchased it from defendant. The court held that there was no inherent danger of explosion of kerosene of the test contained in the can purchased, when handled with ordinary care for the well known use for which the product was intended.

In *Rogers v. Kresge Co.,* 23 Ohio N. P. N. S. 448, plaintiff purchased from defendant a quantity of steel wool sold in original packages that came from the manufacturer. The article was used to scour pans, and in so using it certain steel particles from the wool penetrated plaintiff's hand. The negligence charged was the failure to warn plaintiff of the dangers incident to its use. In sustaining a motion to direct a verdict for defendant, the court said that steel wool is not a dangerous article but might become dangerous by the manner in which it is used. In other cases involving a sparklet bottle (*Bruckel v. J. Milhau's Son,* 102 N. Y. S. 395), a pop bottle which exploded (*Stone v. Van Noy Railroad News Co.,* 153 Ky. 240), a seltzer siphon

(*Glaser v. Seitz,* 71 N. Y. S. 942) the appliances designated were held not to be inherently dangerous, and recovery was denied to those injured.

These decisions, involving appliances and articles that are apparently far more dangerous than the spring clamp here in question, lead to the conclusion that the court erred in characterizing this spring as an inherently and imminently dangerous instrument and allowing the count to go to the jury on that theory. It cannot fairly be regarded as such. It is a matter of common knowledge that springs of this type are used on various types of jars containing fruit, candy, tobacco and other products, and the ordinary experiences of life would require any person using them to exercise ordinary caution. As was said in *Miller v. Sears, Roebuck & Co., supra,* "any innocent article might under some extraordinary circumstances injure a person, yet, this does not render the article itself inherently and imminently dangerous." If plaintiff had held down any portion of the spring while releasing the lug the accident could not have happened. It was not the inherent danger of the spring that caused the accident, but the manner in which it was used. It follows from what has been said that the charge of negligence contained in par. 4 was not sustained by any competent evidence, and the count should therefore have been withdrawn from consideration of the jury, on defendant's motion.

Par. 5 of the complaint, advancing a different theory of recovery, is predicated upon an implied warranty that the spring used on the jar to secure the cap was in good order and free from defect and danger when the jar was opened. This paragraph of the complaint reads as follows:

"That the defendant did impliedly warrant and represent to the plaintiff that the spring used on said jar to secure the cap thereon was in good order and

free from defect and danger when said jar was opened; yet the plaintiff states that the said spring on the said jar was defective and not in good order and was in a state of high tension and would fly in the air from the slightest pressure, of which conditions the defendant had knowledge or, in the exercise of ordinary care and caution would have had knowledge, and that while the plaintiff, in the exercise of the aforesaid degree of care and caution, was opening said jar, the aforesaid spring, by reason of the defective condition was caused to and did fly up and hit the plaintiff in the eye, whereby she sustained severe injuries.''

Defendant moved also to withdraw this charge from the consideration of the jury and at the end of plaintiff's case moved for a directed verdict. Both motions were overruled. The charge of this paragraph that the jar was defective and not in good order is not sustained by the evidence. Plaintiff produced one Kenneth Bevington as an expert witness, who testified over objection of defendant that he had made certain tests with reference to the spring clamp on the jar, and stated that the spring when released would fly into the air about nine times out of ten ''if released with one hand and not held with the other''; that if the spring were made of heavier material and with less angle it would have had the same tension, ''but possibly would not have as much tendency to fly from the bottle''; that any spring when distorted from its original shape has a tendency to return to that shape; and that ''it is a good spring, so far as spring quality is concerned.'' Nowhere in his testimony does he suggest that there was any defect in the spring, that it was not in good order or that it was improperly adapted for the use for which it was designed.

Plaintiff, having failed to show that the spring was actually defective or out of order or improperly adapted for the use for which it was intended, resorts

to the contention that the implied warranty, held in some cases to exist as to food sold for immediate consumption, should be extended to the container in which the food is sold. Her counsel relies on several decisions in this and other jurisdictions holding that where articles of food are purchased from a retail dealer for immediate consumption the consequences resulting from the purchase of unsound articles may be so serious and prove so disastrous to the health and life of the consumer that public safety demands there should be an implied warranty on the part of the vendor that the article is fit for the use for which it was purchased. *Wiedeman v. Keller,* 171 Ill. 93, is the principal authority cited. In that case plaintiff had purchased meat from the defendant from which she and her family became ill. The question arose as to whether a retail dealer in meats and provisions can be regarded as a warrantor that the goods sold for immediate consumption are wholesome and free from all defects that might injure the health of the purchaser, or whether the vendor is relieved of the responsibility where he has no knowledge of the defective character of the articles sold and has used reasonable and ordinary care to guard against the selection or purchase of defective or unwholesome products for sale to his customers. In sustaining a verdict for plaintiff it was held that defendant was liable in damages under an implied warranty as to the wholesomeness of the meat notwithstanding the fact that he was unaware of its condition. The court in the instant proceeding indicated that by analogy with the *Wiedeman* case the implied warranty should logically be extended to the container in which the food was sold, but there is nothing in the facts or in the reasoning of the court to support such a conclusion.

The only decision cited which is at all pertinent to the facts here involved, and where the question under

discussion was considered, is the case of *Clark and Wife v. Army & Navy Co-operative Society, Ltd.*, British Ruling Cases, Vol. 3, p. 435. Defendant had there sold to plaintiff a tin can containing disinfecting powder. While trying to open it some of the contents lodged in her eye, causing injury. The tin which injured plaintiff was one of a consignment of 18 cans, 11 of which were sold and the other seven of which had been returned to the manufacturer. Three of them were purchased by a Mrs. Stebbing, who in opening one of the cans had experienced an accident similar to that sustained by Mrs. Clark. Mrs. Stebbing's husband had written to defendant, advising him of the accident. Defendant's manager then instructed his assistants to warn other purchasers. In the sale of the tin to Mrs. Clark no such warning was given. It was shown on the trial that three other parties had been injured in opening tins of this kind. The complaint contained two counts, one based on an alleged breach of an implied warranty and the other in tort. The jury found for plaintiff and awarded damages, and the court in sustaining the judgment did so on the ground that the proof supported the charge of negligence. The element of scienter upon which the reviewing court relied in that decision is entirely absent in the instant proceeding. Defendant here had no occasion to regard this container as dangerous, and holding as we do that it was not an inherently dangerous instrumentality, there was no necessity or occasion for warning plaintiff when the purchase was made.

Defendant in its reply brief calls our attention to a case recently decided in the superior court of Los Angeles, California, reported in the Chicago Daily Law Bulletin of Monday, April 20, 1936, which appears to be analogous to the facts in the case at bar. In that proceeding plaintiff was injured by the explosion of

a bottle of ginger ale which she had purchased and placed in a basket with other merchandise. She brought suit against the grocer from whom the bottle was purchased, as well as the manufacturer, on ground of negligence and for breach of an implied warranty. In finding for the grocer and against the manufacturer on ground of negligence, the court held that a warranty of merchantable quality does not embrace explosions of a container of foodstuffs so as to establish a basis for recovery of damages for injuries resulting from such explosion, and that it was not contemplated that a warranty of fitness for a particular purpose was thereby attached to many forms of containers in which goods sold for human consumption are confined or packed, but only to the contents thereof— the food or beverage or substance which the purchaser was seeking and buying; "that the container is but an incident to the goods thus offered for sale, and while it is just and reasonable to burden the seller with an implied warranty of fitness or of merchantable quality of the contents of a container or bottle, or of a sealed package, it would be unreasonably burdensome to attach such warranty to the container of foodstuffs sold, and thus, in effect, make the retail seller of every bottle of pop or carbonated beverage, in the manufacture of which he has no part, an insurer against damage from explosion of such bottle." The statute referred to in that case is the Uniform Sales Act which is similar to the law enacted in this State, and the provisions of which are discussed in the briefs filed in this proceeding. The undisputed evidence in this case discloses that the fruit salad and jar sold to plaintiff was put up by G. B. Raffetto, Inc., of New York, the manufacturer, and therefore the reasoning of the Los Angeles court would apply to the circumstances of this case.

While the conclusion to be reached from the decisions cited in counsels' brief is that there may be an implied warranty as to the wholesomeness of food products, it does not logically follow that this theory of recovery should be extended to containers in which the food is packed, and under the circumstances of this case we hold that there was no such warranty as to furnish the basis for the judgment entered in favor of plaintiff.

Other points are assigned as ground for reversal, including the statement of the court in the presence of the jury that "the retailer was in a way an insurer . . . . ," and the giving and refusal of instructions. In view of our conclusion, however, upon the principal questions involved, a discussion of these points is unnecessary. We believe that the circumstances of this case on the question of liability presented no issues of fact for the jury; that it was purely a question of law as to whether plaintiff could recover, and was treated as such by both parties. Under the circumstances the court should have directed a verdict in favor of defendant, and its failure so to do constituted error. The judgment of the superior court is reversed.

*Judgment reversed.*

John J. Sullivan, P. J., and Scanlan, J., concur.