410 P.2d 999

Leone M. EVANS, Ralph Evans, Don Evans, Bernice Evans Stuart, and Beth Evans Johnson, Plaintiffs and Respondents,

v.

Glen S. STUART, Defendant and Appellant.

No. 10400.

Supreme Court of Utah.

Feb. 14, 1966.

**310**

Kipp & Charlier, Carman E. Kipp, Salt Lake City, for appellant.

Nielsen, Conder & Hansen, Arthur H. Nielsen, Salt Lake City, for respondents.

CROCKETT, Justice:

The plaintiffs, surviving widow and children of Hugh Alva Evans, sued for damages resulting from his wrongful death caused by defendant's negligence in connection with a fire on the latter's farm in Davis County. Upon trial to the court judgment was entered for the plaintiffs. for $9,000 general and $870.55 special damages. Defendant appeals.

Defendant's attack upon the judgment follows a pattern which is not unusual in such cases. He contends 1) that the evidence does not support the finding that he was negligent; 2) that it shows that deceased was contributorily negligent. and/or assumed the risk of his injury; 3) that the damages awarded were excessive. In analyzing these issues we review the evidence in the light most favorable to the trial court's findings.[1]

Defendant, Glen Stuart, has a dairy farm a couple of miles west of Kaysville which he has operated for about 30 years. His. son, Deon Stuart, married Bernice Evans, the daughter of the deceased, and the young couple also live on the farm near defendant's home. Deceased was 67 years of age and was retired. The defendant hired him from time to time to help with odd jobs. on the farm. On March 7, 1963, he had. been taking out a fence when the defend-

1. As to presumption favoring judgment and requirements for reversal, see Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.

ant told him to start a fire to burn up weeds and growth to clean out an irrigation ditch. The preceding winter months had been unusually dry. Adjacent to the ditch there was flammable wheat and alfalfa stubble. When the defendant told the deceased to start the fire the latter called attention to the fact that there was a little breeze blowing. Both men realized that the wind was variable at that time of the year. The deceased went back to work on the fence and the defendant undertook to watch the fire.

The wind did increase and the fire began to spread. Defendant got his small tractor scraper to fight the fire and keep it from extending in the stubble. The tractor ran out of gas and despite the efforts of defendant and another hired man, Rex Terkelson, the fire continued to spread toward some gas tanks and around the area of the home. Continuing their efforts where they were, defendant sent the deceased over to watch the fire which was working toward a pile of lumber. In a short time defendant heard the deceased call for help, but he was busily engaged with Terkelson keeping the fire from getting to the pumps and did not go to his aid immediately. When he heard deceased call for help again, he sent Mr. Terkelson; and when deceased called the third time defendant went to aid him, but by then he was on fire and rolling in the dirt. He was so severely burned that he was taken to a hospital where he languished for a month and five days and died.

### Defendant's Negligence

The primary question confronted, and the most serious one in this case, is whether the evidence will support the finding of the defendant's negligence. The foundational concept of negligence is sometimes stated as conduct which a person should realize exposes others to an unreasonable risk of harm.[2] This reference to conduct which is "unreasonable" ties back to the time-honored definition of negligence: The failure to exercise the degree of care which an ordinary, reasonable and prudent person would use under similar circumstances.[3] It must be appreciated that there is some lack of precision in the word, "reasonable." But neither its use nor the lack of certainty implicit in it can be avoided. And when there is uncertainty as to whether conduct falls within its ambit, the question must be resolved by the "reasonable" mind of the court or jury as to what conforms within the bounds of propriety as fashioned by the customs and the conscience of society. It is with these principles in mind that we consider the problems here involved.

2. Restatement of Torts, § 282 and § 284.

3. See James, Nature of Negligence, 3 Utah Law Review 275; Hillyard v. Utah By- Products Co., 1 Utah 2d 143, 263 P.2d 287.

The defendant is charged with knowing, and unquestionably did know, that which accords with the common knowledge and experience of mankind: that a fire in an area which abounds with dry and flammable materials is a dangerous instrumentality; and that when the wind was already blowing and was gusty and likely to change, the fire might spread and get out of control. He did not have his tractor-scraper, which he appears to have had as a means of emergency control of the fire, prepared for the emergency when it arose. He knew that the deceased was a man 67 years of age and therefore would be somewhat limited in ability to cope with such a fire. He nevertheless directed the deceased to go to "watch" the fire approaching the woodpile. It is urged that this was all deceased was told to do and that he went beyond this direction in fighting the fire. Reasonable inferences can be drawn, and it certainly could be taken to mean that he was to attempt to control the fire, not simply to stand by and watch it work its destruction. When deceased called for help his first two calls went unheeded. It may well be that under this evidence some reasonable minds might have concluded that the defendant used reasonable care for deceased's safety. But it is our opinion that there is also a reasonable basis in the evidence upon which the trial court could believe and find as it did that the defendant failed to exercise the standard of reasonable care the law required of him set forth herein.

### Contributory Negligence

The statements made above concerning the method of review and standard of care in regard to the defendant's negligence, also apply generally to the issues of contributory negligence and of assumption of risk by the deceased, but with this difference to be noted: The burden of proof on these issues was upon the defendant. Accordingly, inasmuch as there is a basis in the evidence upon which reasonable minds could remain unconvinced that the deceased was contributorily negligent, the refusal to so find must be sustained.[4]

### Assumption of Risk

This further should be said in regard to the defense of assumption of risk. It is not identical with but is closely related to contributory negligence.[5] To invoke it and preclude recovery there must be a voluntary assumption of the risk of a known danger where one has a reasonable opportunity to make an alternative choice.[6] Relevant to that issue here is the fact that

4. See statement as to burden of proof on issue of contributory negligence in Ray Transp. Co. v. Consolidated Freightways, 4 Utah 2d 137, 289 P.2d 196.

5. For distinction between contributory negligence and assumption of risk, see statement in Johnson v. Maynard, 9 Utah 2d 268, 342 P.2d 884.
6. See Clay v. Dunford, 121 Utah 177, 239 P.2d 1075.

it is not only the duty, but it is usually the desire of a conscientious employee, to be obedient to the directions of his employer. For this reason it is usually held that when an employee is acting in compliance with the orders of his superior he should not be deemed to have voluntarily assumed the risk of harm.[7] This idea is of course also subject to the rule of reason and an employee would not be justified in taking foolhardy risks by exposing himself to obvious danger. However, the evidence does not compel any such conclusion here. As stated in regard to the other issues hereinabove discussed, his conduct could be judged by reasonable minds to come within the required standard of due care; and the question of his assumption of risk was therefore one for the court to determine. We have often stated that the jury has broad prerogatives in determining issues of fact;[8] and when it has the role of trier of the facts, this is of course equally true of the trial court.

### Claimed Excessive Damages

 It is difficult to appreciate defendant's point of view in urging that the award of $9,000 for the loss of deceased's life was excessive. Casting some light thereon, it is of interest to note that the defendant's counsel attempts to blow hot and cold on the same spot. In trying to escape liability on the issue of contributory negligence he argues that it was the deceased's own fault he got burned, praising his experience and capabilities, including that, "even at 67 his physical condition was such that he was always running foot races with his kids and could still beat them all in a race." Whereas, in arguing the issue of damages, defendant asserts that "the cold bare facts of the matter are that the decedent, although a loving father and grandfather, had a life expectancy of only 12 years"; that he was retired and except for part-time work "he was not productive and made no substantial economic contributions to his wife or children"; that he received social security and "although such payments for him stopped on his demise, the cost of supporting him also ceased. In this respect * * * [his death] was a net economic gain." Without going into too much detail, the evidence can be viewed as showing monthly losses of: earnings averaging about $100, social security benefits $55, veteran's benefits $30, less certain expenses, which would result in a net loss of about $150 a month. This multiplied by a life expectancy of 12 years would make a loss in money of more than double the amount awarded.

7. See Nissula v. Southern Idaho Timber Protective Assn., 73 Idaho 37, 245 P. 2d 400; 56 C.J.S. Master and Servant, § 357; 35 Am.Jur. Master and Servant, § 320; and also see Stam v. Ogden Packing & Provision Co., 53 Utah 248, 177 P. 218.

8. See Joseph v. W. H. Groves L. D. S. Hospital, 10 Utah 2d 94, 348 P.2d 935.

**314**

While the role of a judge calls for understanding and for tolerance of widely varying viewpoints; and for making allowance for the natural and desirable tendency of counsel to have some enthusiasm for his case, when it is argued seriously that the sum of $9,000 for the loss of this man's life is so excessive as to shock the conscience and require reversal,[9] one is lead to wonder whether something is awry either with the sincerity or with the good judgment of the proponents of such an argument.

Affirmed. Costs to plaintiffs (respondents).

HENRIOD, C. J., and McDONOUGH; WADE and CALLISTER, JJ., concur.

---

9. See Wheat v. Denver & R. G. W. R. Co., 122 Utah 418, 250 P.2d 982.