385 So.2d 713 (1980)
BORRELL-BIGBY ELECTRIC COMPANY, INC., Appellant,
v.
UNITED NATIONS, INC., Appellee.
No. 79-371.
District Court of Appeal of Florida, Second District.
June 27, 1980.
Benjamin H. Hill, III, Charles P. Schropp and James R. Freeman of Shackleford, Farrior, Stallings & Evans, Tampa, for appellant.
Lynn H. Groseclose of Sprott & Groseclose, Lakeland, for appellee.
SCHEB, Judge.
Plaintiff sued defendant company for breach of implied warranty in installing a fire alarm system in a storage warehouse. The jury returned a verdict for plaintiff for the loss sustained when its goods were destroyed by fire. The evidence, however, failed to establish either a breach of warranty or, assuming such a breach, that it was the proximate cause of plaintiff's loss. We reverse.
Borrell-Bigby Electric Company, Inc., designed and installed a fire alarm system in *714 a storage warehouse pursuant to an oral contract negotiated by Anthony Borrell and Robert Vetzel, owner of the warehouse. The system was designed to telephone an alarm to a local fire station in case of fire. Vetzel had the system installed to qualify the warehouse for the storage of items belonging to transient military personnel. After installation of the system, United Nations, Inc., a local contractor, stored its goods in Vetzel's warehouse. Subsequently, a fire consumed both the warehouse and United Nations' goods. Apparently, the alarm system did not telephone an alarm to the local fire station,[1] and firemen did not respond until an individual reported a fire in the vicinity of the warehouse.
United Nations sued Vetzel, Borrell-Bigby and Borrell-Bigby's insurance carrier, Aetna Insurance Company. It alleged that it was a third-party beneficiary of an implied warranty of merchantability running from Borrell-Bigby to Vetzel, and that Borrell-Bigby had breached the warranty in that it did not design the system to include an independent power source or a supervisory circuit to warn of a power loss to the system.
Borrell-Bigby made four contentions in defense. First, it asserted that the fire was an independent, intervening cause of United Nations' loss. Second, it maintained that United Nations was only an incidental beneficiary of any implied warranty. Third, it contended that, even assuming United Nations was an intended beneficiary of a warranty running to Vetzel, it had not breached the warranty because the warranty did not extend to the matters alleged. Finally, it argued that any alleged breach was not the proximate cause of United Nations' loss. Both at the close of United Nations' case and again at the close of its case, Borrell-Bigby moved for a directed verdict on these grounds. The trial court denied the motions and the jury returned a verdict for United Nations against Borrell-Bigby and Aetna. Borrell-Bigby now appeals the denials of its motions.
United Nations attempts to sustain the judgment on the same grounds it asserted at trial. It contends that it was an intended beneficiary of a warranty of merchantability running to Vetzel and that Borrell-Bigby breached the warranty. It alleges that the system was not reasonably fit for the purpose for which such systems are used, that is, to transmit an alarm in case of fire. It contends that the system did not do so because it did not include an external or emergency power source. Borrell-Bigby breached the warranty, it argues, by failing to include this type of power source as well as a supervisory circuit to warn of a power loss.
Our views on the issues of breach and proximate cause preclude the need to determine whether the fire was an independent, intervening cause,[2] or whether United Nations was an intended beneficiary of the contract.
*715 With regard to the alleged breach, Robert Vetzel testified that Anthony Borrell told him during contract negotiations that more elaborate and expensive fire alarm systems were available. Presumably these would have provided the sophisticated safety features United Nations claims were improperly omitted from the system installed.[3] Nevertheless, Vetzel did not seek Borrell-Bigby's advice on a general fire alarm system. Moreover, Vetzel acknowledged that the system he wanted was one which would satisfy minimum military requirements and, after installation, military authorities inspected and approved the system. Further, while there were more sophisticated protection devices available, the system did contain two indicator lights on its warehouse control panel designed to warn of a power loss or malfunction such as a loose connection. As stated by this court in Wisner v. Goodyear Tire & Rubber Co., 167 So.2d 254, 255 (Fla.2d D.C.A. 1964), "[a]n implied warranty of fitness does not extend beyond the obligation to supply an article reasonably fit for the purpose intended, and does not impose a duty to furnish the best article of its kind or an article equal to any other similar or competing article." Accord, Fletcher Co. v. Melroe Manufacturing Co., 238 So.2d 142 (Fla.1st D.C.A. 1970).
There was also expert testimony that the lack of evidence of electrical distress in the system[4] indicated that it was not energized at the time of the fire. The expert testified that his examination of the system following the fire indicated nothing that would have prevented the system from transmitting a signal had it been energized. Consequently, Borrell-Bigby did not breach any implied warranty by failing to include the two safety devices.[5]
In addition, Borrell-Bigby contends that United Nations failed to show proximate cause between its loss and the alleged breach of warranty. A plaintiff may establish proximate cause by circumstantial evidence. Dehon v. Heidt, 38 So.2d 39 (Fla. 1948); Majeske v. Palm Beach Kennel Club, 117 So.2d 531 (Fla.2d D.C.A. 1959). But in so doing, it must show that the alleged breach was the most probable cause of its losses. See Voelker v. Combined Insurance Co. of America, 73 So.2d 403 (Fla. 1954); Food Fair Stores of Florida, Inc. v. Moroni, 113 So.2d 275 (Fla.2d D.C.A. 1958). Since United Nations relied on circumstantial evidence to prove proximate cause, it had to establish that the allegedly faulty design of the fire alarm system was the most probable cause of its losses. As noted above, an expert witness testified that the system was not energized at the time of the fire. The same expert also testified that he found evidence that the fire had burned hotter in the northeast corner of the warehouse which indicated that accelerants were present. This raised an inference that an arsonist had sabotaged the system. United Nations did not rebut this testimony. Consequently, the evidence did not establish that the alleged breach of warranty of the system was the most probable cause of United Nations' loss. Therefore, United Nations failed to establish proximate cause.
Since no view of the evidence could sustain a judgment for United Nations, the trial court erred in failing to direct a verdict for Borrell-Bigby.
REVERSED.
GRIMES, C.J., and DANAHY, J., concur.
NOTES
[1] Prior to the time the fire station should have received an alarm from the warehouse, the firemen responded to an alarm which took them in the opposite direction of the warehouse. The sixteen-year-old son of a fireman stayed in the station to answer the radio and phones, and made notes concerning calls received during the absence of the firemen. Subsequently, one of the firemen typed information contained in the notes into the station's log book. The log book did not indicate a call from the warehouse. At trial Borrell-Bigby objected to United Nations' introduction of the fire log because United Nations did not first call the maker of the notes or introduce them into evidence, and the fireman who made the log did not have personal knowledge as to the information recorded.
[2] In Nicholas v. Miami Burglar Alarm Co., 266 So.2d 64, 65-66 (Fla.3d D.C.A. 1972), the Third District accepted the general rule that "a company which negligently installs or maintains a burglar alarm system pursuant to a contractual arrangement is not liable to a customer for an ensuing burglary... ." The Florida Supreme Court, however, found the principle not applicable and reversed. Nicholas v. Miami Burglar Alarm Co., 339 So.2d 175 (Fla. 1976). We perceive no reason to distinguish between a burglar alarm system and a fire alarm system with regard to this principle. Nevertheless, in view of our decision, we do not reach the merits of the principle. For a case holding that burglary is foreseeable during the malfunction, see Liggon v. Chas. P. Davis Hardware, Inc., 492 S.W.2d 374 (Tex.Civ.App. 1973).
[3] The testimony, however, does not indicate what safety features the more elaborate and expensive systems would have contained.
[4] Electrical distress occurs when energized electrical wires touch and arc. The expert testified that the result will be "something like a weld bead or a copper splatter." Apparently, electrical distress could happen when a fire burns the insulation from the wires and causes them to come into contact.
[5] The trial court permitted United Nations, over Borrell-Bigby's objection, to introduce portions of the National Fire Protection Association Code. These portions stated that fire alarm systems should have external or emergency power sources and supervisory circuits. Borrell-Bigby argues that admission of the Code was error. In view of our decision, we do not address this issue. Even if the Code was properly admitted, however, it did not prove that there was only one type of acceptable system.