DCR INCORPORATED, dba The Company, Plaintiff and Appellant,

v.

PEAK ALARM COMPANY and John Does I–V, Defendants and Respondents.

No. 17647.

Supreme Court of Utah.

March 29, 1983.

B. Ray Zoll, Salt Lake City, for plaintiff-appellant.

Steven H. Stewart, Salt Lake City, for defendants-respondents.

HALL, Chief Justice:

Plaintiff, the owner of a clothing store, appeals a summary judgment limiting the liability of defendant burglar alarm company to $50 in an action based on theories of negligence, product liability and breach of contract. Plaintiff has alleged the following facts.

In September of 1976, the parties executed a contract providing for installation and maintenance by defendant of a burglar alarm system in plaintiff's clothing store. The contract contained a clause fixing liquidated damages at $50 in the event of any breach by defendant and stating that defendant was "not an insurer." Defendant installed the system as agreed and plaintiff paid to defendant a $635 installation charge. Plaintiff also paid to defendant a service charge of $28 each month throughout the term of the contract.

On December 22, 1979, a burglary occurred at plaintiff's store, resulting in an inventory loss of $55,000. Plaintiff's alarm system failed to detect the burglary. Plaintiff discovered that the alarm system had been rendered inoperative prior to the burglary through the use of a simple deactivating technique well-known to criminals. Plaintiff also learned that defendant had been aware of the common use of this technique by criminals and that defendant knew of an easy, inexpensive way to protect its alarm systems against the risk of such deactivation. Plaintiff asked defendant why it had not warned plaintiff of the vulnerability of its existing system or suggested the simple correction which would have eliminated this defect from the system. Defendant replied that the issuance of such warnings to customers "would be too time-consuming."

Plaintiff sued defendant for negligence in failing to use ordinary care in maintaining its alarm system and in failing to warn plaintiff of the inadequacy of the system. Plaintiff also alleged causes of action based on product liability and contract. Defendant moved for summary judgment, alleging that even assuming plaintiff's allegations to be true, defendant's liability for negligence or breach must be limited to the $50 liquidated damages fixed by the contract. The trial court granted summary judgment on this ground. Plaintiff appeals.

On appeal, the parties focus on plaintiff's allegations of negligence. Plaintiff claims that even if the contractual liquidated damages provision limited defendant's liability for breach of contract to $50, this limitation had nothing to do with defendant's liability in tort under the negligence theories set forth in the complaint. Defendant does not deny negligence, but, rather, continues to rest its entire argument on the premise that if plaintiff were to prove such negligence, plaintiff could recover as damages only the $50 liquidated damages provided by the contract. Thus, the issue presented by this appeal is whether, assuming negligence on the part of defendant, the liquidated damages provision in the parties' contract governs liability in tort as well as in contract.

Defendant contends that the "negligence" alleged by plaintiff consists solely of defendant's failure to perform obligations expressed in the service contract rather than of any breach of a duty existing apart from the contract. Defendant claims that plaintiff therefore has alleged no cause of action in tort but only failure of performance of the contract, a breach for which the liquidated damages provision governs liability. An examination of plaintiff's complaint, however, shows the fallacy of this assertion. Plaintiff's first cause of action alleges breach by defendant of a duty "to warn of known hazards and defect attendant with the use of this particular system." Such a duty to warn is nowhere expressed in the parties' contract; rather, this duty, if shown to exist, would derive from defendant's general duty of due care toward plaintiff as defined by tort law.

This Court has defined negligence as a failure to exercise the degree of care which a reasonable person would have exercised under the same circumstances, wheth-

er by acting or by failing to act.[1] In cases where the alleged negligence consists of a failure to act, the person injured by another's inaction must demonstrate the existence of some special relationship between the parties creating a duty on the part of the latter to exercise such due care in behalf of the former.[2] Relationships giving rise to such a duty include those between carriers and passengers, employers and employees, owners and invitees and parents and children. Similarly, contractual relationships for the performance of services impose on each of the contracting parties a general duty of due care toward the other, apart from the specific obligations expressed in the contract itself.[3] The care to be exercised in any particular case depends upon the circumstances of that case and on the extent of foreseeable danger involved [4] and must be determined as a question of fact.[5]

■ A party who breaches his duty of due care toward another may be found liable to the other in tort, even where the relationship giving rise to such a duty originates in a contract between the parties. The California Supreme Court recently explained the difference between a tort action arising from a contractual relationship and an action brought on the contract itself:

[A] wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief, and in such circumstances the existence of *the contractual relationship will not bar the injured party from pursuing redress in tort.*

\* \* \* \* \* \*

... *"[I]f the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu, but if it arises from a breach of duty growing out of the contract it is ex delicto."* [Quoting *Peterson v. Sherman,* 68 Cal.App.2d 706, 157 P.2d 863 (1945).] ...

... As Professor Prosser has explained: "[Whereas] [c]ontract actions are created to protect the interest in having promises performed," "[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties...." Prosser, Law of Torts (4th ed. 1971) p. 613. [Emphasis added; some bracketed language in original.] [6]

The Indiana Supreme Court has also expressed the above distinction as follows:

If a defendant may be held liable for the neglect of a duty imposed on him, independently of any contract, by operation of law, a fortiori ought he to be liable where he has come under an obligation to

1. *Meese v. Brigham Young University,* Utah, 639 P.2d 720 (1981).

2. W. Prosser, Handbook of the Law of Torts §§ 53, 56 (4th ed. 1971); 2 F. Harper & F. James, The Law of Torts § 18.6 (1956); *Gitzhoffen v. Sisters of Holy Cross Hospital Association,* 32 Utah 46, 88 P. 691, 696 (1907).

3. Prosser, *supra;* see, *e.g., Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp.,* 569 F.2d 181 (2d Cir.1977); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Nixdorf v. Hicken,* Utah, 612 P.2d 348 (1980).

4. *Kilpack v. Wignall,* Utah, 604 P.2d 462 (1979); *Black v. Nelson,* Utah, 532 P.2d 212 (1975); *Erickson v. Bennion,* 28 Utah 2d 371, 503 P.2d 139 (1972); *Brigham v. Moon Lake Electric Association,* 24 Utah 2d 292, 470 P.2d 393 (1970).

5. *Little America Refining Co. v. Leyba,* Utah, 641 P.2d 112 (1982); *Benson v. Ames,* Utah, 604 P.2d 927 (1979); *Wheeler v. Jones,* 19 Utah 2d 392, 431 P.2d 985 (1967); *Evans v. Stuart,* 17 Utah 2d 308, 410 P.2d 999 (1966). It should be noted that

in applying the universally accepted standard of care: that of the ordinary, reasonable and prudent man under the circumstances, the term "ordinary" should be given its true meaning by not requiring the conduct of an extraordinarily careful person. Such an "ordinary" man is not necessarily a supercautious individual devoid of human frailties and constantly preoccupied with the idea that danger may be lurking in every direction about him at any time.

*Whitman v. W.T. Grant Co.,* 16 Utah 2d 81, 395 P.2d 918 (1964).

6. *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980).

use care as the result of an undertaking founded on a consideration. . . . In some cases this ground of liability may coexist with a liability on contract towards the same person, and arising (as regards the breach) out of the same facts. . . . *And this duty is not affected by the fact, if so it be, that he is acting for reward, in other words, under a contract, and may be liable on the contract.* The two duties are distinct. . . .[7]

■ This Court has applied the above negligence rules specifically to cases such as this which involve contracts for services. In an early case, the Court held that the defendant hospital, which had undertaken to provide medical services to the plaintiff, owed him a duty of due care based on the parties' contractual relationship. The Court explained:

> While it may be said that this is an action of tort, and not on contract, nevertheless, in such action, a plaintiff seeking to recover for injuries sustained by him through the negligence of another must show that the latter committed a breach of some duty owing to the plaintiff or imposed for his benefit. *To show what that duty was, it was proper to aver and prove the relationship between the parties.* As tending to show a duty owing from the defendant to the plaintiff, it was proper to aver and prove that the defendant had received him under contract for a consideration, and as tending to show what it was that the defendant had assumed and undertaken to do. . . . *If . . . it received him for treatment un-*

*der a contract for pay, and undertook and assumed to treat him, then it owed a duty . . . to use reasonable care in the giving of the treatment* and the doing of that which it had agreed and assumed to do.[8]

A majority of jurisdictions, like Utah, have recognized a duty to exercise reasonable care on the part of one who undertakes to render services.[9] *Restatement (Second) of Torts* formulates this principle as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.[10]

Prosser, in his treatise on torts, states the rule more broadly:

> It is no longer in dispute that one who renders services to another is under a duty to exercise reasonable care in doing so, and that he is liable for any negligence to anyone who may foreseeably be expected to be injured as a result.[11]

Carl S. Hawkins, Dean and Professor of Law, J. Reuben Clark Law School, Brigham Young University, recently had this to say on the subject:

> The "duty" concept limits defendants' liability to claims arising out of particular relationships and risks. In professional negligence cases, a contract with the

---

7. *Flint & Walling Manufacturing Co. v. Beckett,* 167 Ind. 491, 79 N.E. 503, 505, 506 (1906). See *Amphitheater Public Schools v. Eastman,* 117 Ariz. 559, 574 P.2d 47 (1977); *Atkinson v. Orkin Exterminating Co.,* 5 Kan.App.2d 739, 625 P.2d 505 (1981); *Quitmeyer v. Theroux,* 144 Mont. 302, 395 P.2d 965 (1964); *Hall Jones Oil Corp. v. Claro,* Okl., 459 P.2d 858 (1969); *DiPangrazio v. Salamonsen,* 64 Wash.2d 720, 393 P.2d 936 (1964), and cases cited *supra,* note 3.

8. *Gitzhoffen v. Sisters of Holy Cross Hospital Association, supra,* note 2, 88 P. at 696. See *Nixdorf v. Hicken, supra,* note 3 at 354; *Benson v. Ames, supra,* note 5 at 929; *Crandall v.*

*Ed Gardner Plumbing & Heating,* 17 Utah 2d 138, 140, 405 P.2d 611, 612 (1965).

9. See cases cited at Restatement (Second) of Torts app. § 323 (1966 & Supp.1979).

10. Restatement (Second) of Torts § 323 (1965). The United States Court of Appeals, Tenth Circuit, recently recognized the Restatement rule in a case involving the interpretation of Utah law. *Marchello v. Denver & Rio Grande Western Railroad Co.,* 576 F.2d 262 (1978).

11. Prosser, *supra,* note 3, § 104 Services. See cases cited *id.* at note 77.

client most often creates the relationship from which the duty of care arises. However, the defendant's tort liability is not based upon breach of contract, but rather upon violation of the legal duty independently imposed as a result of what the defendant undertook to do with relation to the plaintiff's interests. Thus, when a defendant has undertaken to give professional services gratuitously, liability may be imposed for injuries resulting from substandard conduct, even though there is no contract.[12] [Citations omitted.]

In the present case, defendant's duty to warn plaintiff of the vulnerability of its alarm system does not originate from any promise contained within the service contract itself. Rather, the duty as it exists in this case is derived from defendant's general duty of due care which accompanies its ongoing contractual relationship with plaintiff for service and maintenance of the alarm system. Thus, plaintiff's allegation of failure to warn provides the basis for a cause of action in tort which is entirely separate from any contract-based claims which plaintiff might present.

■ Defendant contends that even though plaintiff has alleged liability in tort as well as in contract, the contractual liquidated damages clause prevents plaintiff from recovering under any theory.

The contractual liquidated damage clause reads:

It is agreed between the parties hereto that [defendant] is not an insurer; that the payments hereinbefore named are based solely on the value of the services provided for herein; that, from the nature of the services to be rendered, it is impracticable and extremely difficult to fix the actual damages, if any, which may proximately result from a failure on the part of [defendant] to perform any of its obligations *hereunder;* that, in case of the failure of [defendant] to perform any of its obligations *hereunder,* and the resulting loss to [plaintiff], [defendant's]

liability *hereunder* shall be limited to a fixed sum of $50.00, as liquidated damages, and not as a penalty, and this liability shall be exclusive. [Emphasis added.]

The above provision contains no expression of an intent of the parties to limit defendant's prospective liability in tort. Rather, its language applies to "obligations hereunder" and "liability hereunder." Although the clause concludes with the phrase "and this liability shall be exclusive," such language, viewed in context, does not clearly show an intent to limit noncontractual liability.

Even if this Court were to construe the contractual liquidated damages clause as an attempt to limit liability in tort as well as in contract, the enforceability of the clause would be questionable because of its lack of clarity. This Court has indicated that it does not favor contract clauses purporting to limit or negate such liability. In *Union Pacific Railroad Co. v. El Paso Natural Gas Co.,* 17 Utah 2d 255, 408 P.2d 910 (1965), this Court refused to enforce a very detailed and thorough exculpatory clause "against any and all liability, loss, damage [and] claims ... *of whatsoever nature*" to protect the plaintiff from a personal injury claim based on negligence. The Court there reiterated the rule that covenants purporting to relieve a party of his duty of due care are disfavored and sometimes declared invalid as against public policy. The Court then stated:

The majority rule appears to be that in most situations, where such is the desire of the parties, and it is clearly understood and expressed, such a covenant will be upheld. *But the presumption is against any such intention, and it is not achieved by inference or implication from general language* such as was employed here. *It will be regarded as a binding contractual obligation only when that intention is clearly and unequivocally expressed.*

If it had been the intent of the parties that the defendant should indemnify the plaintiff even against the latter's negligent acts, it would have been easy

enough to use that very language and to thus make that intent clear and unmistakable .... [Emphasis added; footnotes omitted.] [13]

In the present case, the language employed by the parties does not "clearly and unequivocally" express an intent to limit defendant's tort liability. Absent such a clear expression of intent, we decline to construe the contractual liquidated damages clause in such a way as to limit liability arising outside of the contract. We hold that the present liquidated damages clause does not affect plaintiff's right to present proof concerning the factual question of breach of duty and attendant negligence on the part of defendant and to recover reasonable damages therefor as may be shown.

Having reached the above holding, we need not make the further determination of whether the liquidated damages clause in question constitutes an enforceable limitation on defendant's contract liability.

Reversed and remanded for further proceedings consistent with this opinion. Costs to plaintiff.

OAKS, HOWE and DURHAM, JJ., concur.

STEWART, Justice (dissenting):

I agree with the majority opinion that the limitation of liability clause in the contract pertains only to actions brought under the contract and does not affect tort liability. The law does not look with favor upon a covenant which purports to relieve one of the fundamental duties of due care for the safety of others. As to tort actions, such a covenant may be void as against public policy, at least in some cases, but if not, such a clause is strictly construed in actions *ex delicto* and is binding only if the parties' intention to relieve one of the parties from the duty of due care imposed by law is unambiguous and "unequivocally expressed." *Union Pacific Railroad Co. v. El Paso Natural Gas Co.,* 17 Utah 2d 255, 259,

408 P.2d 910, 914 (1965). I concur with the majority that the limitation of liability clause in the contract does not apply to a tort action, and that the contract remedy is not an exclusive remedy where there is an actionable breach of duty in tort beyond the duties and obligations established by the contract.

Nevertheless, I respectfully dissent because in my view the defendant cannot, as a matter of law, on the facts alleged in this case, be held liable for any damages based on tortious conduct or strict liability. In short, I submit that the allegations based on the theories of negligence and strict liability fail to state claims upon which relief may be granted.

DCR alleges that Peak Alarm knew that the type of system installed could be disabled, that subsequent to the sale to plaintiff it was bypassed by burglars using a fairly simple technique at other installations, and that the vulnerable feature of the system was correctable at a small cost. DCR's legal contention is that Peak Alarm had a duty to warn DCR that the system could be bypassed and that Peak's failure to warn constituted negligence. There is no allegation that the system installed had any defect either in its design or construction.

Although a supplier of a dangerous instrumentality has a duty to warn of known dangers inherent in the product or in its contemplated use, *Comstock v. General Motors Corp.,* 358 Mich. 163, 99 N.W.2d 627 (1959), it is generally true that a supplier of goods sold on the open market generally has no duty to warn as to non-dangerous products. *E.g., Robinson v. Williamsen Idaho Equipment Co.,* 94 Idaho 819, 498 P.2d 1292 (1972); *Crandall v. Stop & Shop, Inc.,* 288 Ill.App. 543, 6 N.E.2d 685 (1937); *Bradshaw v. Blystone Equipment Co.,* 79 Nev. 441, 386 P.2d 396 (1963); Annot., 76 A.L. R.2d 9, § 9 (1961).

The burglar alarm system in this case is an ordinary article of commerce designed to provide limited protection against burgla-

13. See also *Walker Bank & Trust Co. v. First Security Corp.,* 9 Utah 2d 215, 341 P.2d 944 (1959).

ries. It is commonly known that no burglar alarm system is foolproof. Every burglary prevention or alarm system can be circumvented in one way or another. Given the nature of burglary prevention systems and the ingeniousness of those committed to circumventing such systems, it cannot be reasonably concluded, in my view, that just because a system may be circumvented or disabled the vendor should give notice of that fact to all its customers. In the ongoing war against burglaries, the possibility of disablement and circumvention are obvious risks limited primarily by the experience and sophistication of a burglar. In my view, Peak has no legal duty subsequent to the sale to warn of a particular manner by which the system could be defeated.

The scope of the defendant's duty to protect the plaintiff in this case should be determined by this Court as a matter of law. *See generally,* Thode, "Tort Analysis: Duty-Risk v. Proximate Cause and the Rational Allocation of Functions Between Judge and Jury," 1977 Utah L.Rev. 1; Hawkins, "Premises Liability After Repudiation of the Status Categories: Allocation of Judge and Jury Functions," 1981 Utah L.Rev. 15, 35–40.

The majority has determined that defendant has a legal duty, albeit of an undefined scope, to protect its customers from those who may by-pass the alarm system. I disagree with that conclusion. I am persuaded that the better position, and the one I think supported by the authorities, is that defendant has no such duty. Furthermore, I think the case cannot stand on a theory of strict liability. Whether based on negligence or strict liability, liability cannot be sustained in this case because, in the absence of fraud or misrepresentation by the seller, a proper allocation of duties and risks in this case requires the purchaser of a system to bear the risk of loss caused by a burglary.

This conclusion is supported by the reasoning of the court in *Lobianco v. Property Protection Inc.,* 292 Pa.Super. 346, 437 A.2d 417 (1981), which I think is fully applicable here. Although the court addressed the issue of the duty of a company offering burglary prevention systems in the context of strict liability, the reasoning applies with equal force to both a negligence and a strict liability action:

> Homeowners are not "otherwise defenseless victims" of burglar alarm manufacturers in the same sense that a buyer of an automobile, for example, may be the victim of the automobile manufacturer. If the property is valuable, the homeowner may insure it. To apply Section 402A to the present case would in practical effect excuse the homeowner from having to insure the property and would shift the risk of its loss to the burglar alarm manufacturer. This would represent a less, not more, equitable allocation of the risk. The homeowner, not the manufacturer, knows what property is in the home, and its value; the manufacturer does not. Even if the manufacturer were to find out what property was in the home before installing the burglar alarm system, the homeowner could, and probably would, add other property, without notice to the manufacturer. As between the homeowner and the manufacturer, the manufacturer is more "defenseless" than the homeowner. If the homeowner buys a silver service or a stereo system, at least he can get insurance against its loss; but the manufacturer cannot, for it will not know that the service or stereo has been put in the home. Thus it may not be said that " 'the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business.' " [Citation omitted.] Nor may it be said that the manufacturer ought to protect itself by increasing its charge, in that way distributing the risk. That would mean that a homeowner with personal property of only modest value would be required to pay for his burglar alarm system a price high enough to protect the manufacturer against the loss it might incur if a homeowner with personal property of great value were burglarized. Those of modest means would be subsidizing the rich.

*Id.* 437 A.2d at 424–25. This reasoning applies as forcibly to business establishments as to homeowners. *See also* Annot., 53 A.L.R.3d 239 (1973).

I also agree with the law stated in *Borrell-Bigby Electric Co. v. United Nations, Inc.,* Fla.App., 385 So.2d 713 (1980), where the court reversed a lower court decision that a company which had designed and installed an alarm system was liable for losses sustained when the alarm did not work. The court held that a vendor's obligation "does not extend beyond the obligation to supply an article reasonably fit for the purpose intended, and does not impose a duty to furnish the best article of its kind or an article equal to any other similar or competing article." *Id.* at 715 (quoting *Wisner v. Goodyear Tire & Rubber Co.,* Fla.App., 167 So.2d 254, 255 (1964)).

The majority argues that Peak had a duty to warn because the contract is a personal service contract. With that proposition, I cannot agree. The majority's characterization of the Peak Alarm contract as a personal service contract does not stand analysis. The contract was for the sale and maintenance of a system. This is not a case where a duty to protect a person from harm arises because of a special relationship between the parties. W. Prosser, *Law of Torts,* § 56 at 338–43 (4th ed. 1971). The contract in question is not in any way analogous to contracts between "carriers and passengers, employers and employees, owners and invitees and parents and children" (majority opinion p. 435). The principles of law that govern those relationships clearly do not control the instant case where there is only a contract for the installation and maintenance of a burglar alarm system and that is all. The majority's rationale places an equipment maintenance contract on the same basis as a contract for legal and medical services; indeed, it goes far beyond that since the harm was not caused by a failure to perform the maintenance services properly, but rather was caused by a third person in a context totally unrelated to the "personal service" of maintaining the equipment purchased by the plaintiff. In short, in broadly holding that "contractual

relationships for the performance of services impose on each of the contracting parties a general duty of due care toward the other, apart from the specific obligation expressed in the contract itself" (*id.*), the majority has vastly expanded the dimensions of tort duty. I think that such an expansion is unwise and without a sound basis in policy.

It may be too much to contend that the consequence of the majority opinion is to make burglar alarm companies guarantors against burglaries; however, it is not possible to determine from the majority opinion just what duty the law imposes on burglar alarm companies because that issue is left to the jury. Because that duty will be determined as a factual matter on the basis of whether it is foreseeable that burglars will be able to bypass a system, liability may be virtually foreordained. The consequence may be that the goods of burglar alarm companies will simply be priced out of the market.

I think the pleadings fail, as a matter of law, to establish a claim upon which relief may be granted.