996 F.2d 311
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Gerard SCARANO, Plaintiff-Appellant,
v.
ASPEN HEALTH SERVICES CORPORATION, doing business as The
Achievement Foundation, Defendant-Appellee.
 No. 92-4081.
 United States Court of Appeals, Tenth Circuit.
 June 15, 1993.
 
 Before ANDERSON and EBEL, Circuit Judges, and BRIMMER,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Gerard Scarano, a New Hampshire resident, appeals the district court's grant of summary judgment in defendant's favor in this diversity personal injury tort action. Defendant, a Utah corporation, runs a wilderness therapy program for troubled adolescents. The program includes challenging outdoor experiences conducted in the southern Utah desert. Plaintiff agreed to participate in and evaluate the program with a view to marketing the program in exchange for referral fees.
 
 
 3
 As part of the program, plaintiff, an experienced hiker, participated in a hike which was planned to take place in the desert at night, led by defendant's employees. During the drive to the hike starting point, one of the guides became upset following an attempt to radio his girlfriend. As soon as the truck dropped off the hikers and drove away, the guide angrily walked off into the wilderness, followed by the other guide, leaving plaintiff and the teenagers behind. Plaintiff followed the guides and fell over a rock outcropping, breaking his back.
 
 
 4
 In the district court, plaintiff alleged four theories under which defendant owed him a duty of care, giving rise to a cause of action in tort: (1) defendant, as the possessor of the land, owed a duty to plaintiff who was defendant's business invitee; (2) a duty of care arose from a contract between the parties; (3) defendant owed plaintiff a duty to avoid injuring him by active conduct or "misfeasance;" and in the alternative, (4) defendant owed plaintiff a duty to take action to protect plaintiff from harm because a special relationship existed between them. Under the last theory, plaintiff claims defendant's failure to act was "nonfeasance." Plaintiff has abandoned on appeal the theory that he was owed a duty as defendant's business invitee.
 
 
 5
 The district court held defendant owed plaintiff no duty of care, rejecting plaintiff's arguments that he was owed a duty of care under a business invitee theory, and that a duty of care for negligence arose from a contract between the parties. The district court did not make explicit findings on plaintiff's negligence theories of misfeasance, meaning active conduct causing injury, or nonfeasance, meaning a failure to act to prevent injury.[1] The district court ruled that because plaintiff alleged defendant's active conduct caused his injuries, it was unnecessary to address whether there existed a special relationship, a prerequisite for a nonfeasance cause of action.
 
 
 6
 Our review of the grant of summary judgment is de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law," Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991), but "we must view the record in a light most favorable to the part[y] opposing the motion for summary judgment," Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). We conduct a de novo review of the district court's determination of state law. Mares v. ConAgra Poultry Co., 971 F.2d 492, 495 (10th Cir.1992).
 
 
 7
 Our jurisdiction arises from 28 U.S.C. § 1291, and we affirm the district court's order granting summary judgment in defendant's favor.
 
 I. Contract
 
 8
 Plaintiff argues defendant owed him a duty of care arising from a contract between the parties. See DCR Inc. v. Peak Alarm Co., 663 P.2d 433, 437-38 (Utah 1983) (breach of duty of care which arose from ongoing contractual relationship provides for cause of action in tort independent of contract-based claims). The district court held no contract was formed between plaintiff and defendant. Plaintiff claims Utah state law precludes summary judgment because the parties dispute various facts leading to plaintiff's participation in defendant's program. E.g., O'Hara v. Hall, 628 P.2d 1289, 1291 (Utah 1981) ("It is the rule 'that where the existence of a contract is the point in issue and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist.' ") (quoting Pre-Fit Door, Inc. v. Dor-Ways, Inc., 477 P.2d 557, 560 (Ariz.Ct.App.1970)).
 
 
 9
 Disputed facts alone will not overcome a properly supported summary judgment motion. Brown Mackie College v. Graham, 981 F.2d 1149, 1153 (10th Cir.1992). "[T]he dispute about a material fact must be genuine, 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' This inquiry ... 'necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.' " Id. at 1151 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)). "The burden of proving the existence of a contract is on the party seeking enforcement of it." Oberhansly v. Earle, 572 P.2d 1384, 1386 (Utah 1977). A binding contract is not created unless the parties have arrived at a sufficiently definite understanding so that each knows what he is required to do. See Valcarce v. Bitters, 362 P.2d 427, 428 (Utah 1961).
 
 
 10
 Viewing the evidence in the light most favorable to plaintiff, we conclude the evidence proffered by plaintiff, even if true, would not create a contract.[2] Neither this court nor the district court is required to accept plaintiff's legal conclusions based on the undisputed facts. Cf. Medina v. City & County of Denver, 960 F.2d 1493, 1500 (10th Cir.1992) (reviewing court not bound by district court's decision to accept as true allegations in complaint but may affirm district court on any grounds adequately presented to district court). Consequently, we reject plaintiff's allegation that the district court impermissibly weighed the facts.
 
 
 11
 By plaintiff's own account of the events, his evaluation of defendant's program was prefatory to making a contract for business referrals. Therefore, the district court did not err in ruling, as a matter of law, that no contract was formed. See Herm Hughes & Sons, Inc. v. Ouintek, 834 P.2d 582, 583 (Utah Ct.App.1992) ("Whether a contract exists between parties is a question of law...."). Because plaintiff has not demonstrated the existence of a contract with defendant, he cannot rely on a duty of care arising from a contractual relationship. We, therefore, affirm the district court's grant of summary judgment in defendant's favor on the issue of a tort duty created by contract.
 
 II. Nonfeasance
 
 12
 Plaintiff next claims there existed a special relationship between him and defendant, imposing on defendant a duty to act to prevent injury to plaintiff. See DCR Inc., 663 P.2d at 435 ("In cases where the alleged negligence consists of a failure to act, the person injured by another's inaction must demonstrate the existence of some special relationship between the parties creating a duty on the part of the latter to exercise such due care in behalf of the former.").
 
 
 13
 The district court found it unnecessary to determine whether a special relationship existed between the parties, stating that plaintiff's negligence claim alleged active conduct rather than a failure to act. In the district court both parties argued the misfeasance issue on defendant's summary judgment motion. Therefore, we will address the issue. See Medina, 960 F.2d at 1500 ("We review summary judgment orders de novo and may affirm the district court's order on any grounds presented below.").
 
 
 14
 Plaintiff contends a special relationship existed because defendant placed him in a situation where he was completely dependent on defendant for his safety. Plaintiff claims he relied on defendant to provide him with a backpack suitable for the activities, but was actually provided one that was ill-fitting and inappropriate for the hike. In addition, plaintiff relied on defendant's assurances that its program was safe. Therefore, plaintiff trusted that he could safely place himself in the position of a teenage participant, in order to evaluate the program. According to plaintiff, as a result of defendant's representations that the program was safe and its guides were qualified, plaintiff permitted himself to be placed in a situation in which he was deprived of his normal opportunities for self-protection. Plaintiff relies on Beach v. University of Utah, 726 P.2d 413, 415 (Utah 1986) (special relationship will generally be found when one deprives another of his usual opportunities to protect himself or when one assumes responsibility for another's safety).
 
 
 15
 Beach presents the definitive expression of Utah law on whether the court will find a special relationship requiring one to protect another from injury. A party generally does not have an affirmative duty to care for another. Id. at 415. "The essence of a special relationship is dependence by one party upon the other or mutual dependence between the parties." Id. at 415-16. Utah law on special relationships, as articulated in Beach, parallels the Restatement (Second) of Torts § 314A and comment a (1965). The Restatement lists the following special relationships creating a duty to protect: common carriers and passengers, innkeepers and guests, possessors of land open to the public and members of the public who enter the land in response to the owner's invitation, "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection," and employers and employees. Id.; accord Beach, 726 P.2d at 415 & n. 2 (adding to Restatement list, parents and children, and police officers and persons under arrest).
 
 
 16
 Plaintiff claims he qualifies as deserving of protection under the category of one who has been deprived of normal opportunities for protection. He does not suggest he qualifies under any of the other established special relationships. Indeed, his situation does not approach those already established as "special."
 
 
 17
 Here, there is no genuine issue as to any material fact bearing on the existence of a special relationship. Plaintiff, a nonpaying, experienced hiker, volunteered to participate in defendant's program. Plaintiff does not claim there existed, and defendant knew of, any physical or mental impairments affecting his ability or judgment. The relationship between plaintiff and defendant was not a custodial one. Rather, the relationship was one of adults negotiating a business agreement.
 
 
 18
 The question is whether the facts justify imposing on defendant a duty to supervise plaintiff and protect him from hiking over uneven terrain at dusk. Construing the record in the light most favorable to plaintiff, we do not perceive plaintiff was sufficiently dependent on defendant to establish a special relationship, nor do we consider this business arrangement between adults one that society would say deserves special consideration. Consequently, we determine, as a matter of law, that no special relationship existed between plaintiff and defendant. Therefore, defendant owed no duty to act to prevent plaintiff's injuries, and we affirm the summary judgment in defendant's favor on the nonfeasance claim.
 
 III. Misfeasance
 
 19
 In the alternative, Plaintiff alleges defendant owed him a duty, generally, to avoid injuring him by active conduct, or misfeasance. Plaintiff contends defendant acted negligently by planning, designing, and executing a hike in the dark over uneven terrain, by providing him an ill-fitting backpack, and by directing an unqualified person to lead the hike. Although the district court did not expressly rule that defendant owed no duty to plaintiff under this theory, it is apparent from the summary judgment order that the district court found no duty.
 
 
 20
 "The issue of whether a duty exists is entirely a question of law to be determined by the court." Ferree v. State, 784 P.2d 149, 151 (Utah 1989). A finding of legal duty includes policy considerations. Beach, 726 P.2d at 418. In addressing the question of whether a legal duty exists, we keep in mind that the occurrence of an accident or injury does not necessarily mean that someone else must compensate the injured party. Pollick v. J.C. Penney Co., 473 P.2d 394, 396 (Utah 1970). Moreover, everyone of adult age must be taken to appreciate certain risks. Moore v. Burton Lumber & Hardware Co., 631 P.2d 865, 868 (Utah 1981); Wold v. Ogden City, 258 P.2d 453, 456 (Utah 1953).
 
 
 21
 In this case, there is no genuine issue of material fact surrounding how plaintiff was injured. The question is whether plaintiff's injury was reasonably foreseeable, thus establishing a duty requiring defendant "to exercise the degree of care which a reasonable person would have exercised under the same circumstances." Barson ex rel. Barson v. E.R. Squibb & Sons, Inc., 682 P.2d 832, 835 (Utah 1984) (internal quotation and citation omitted); cf. Hansen v. Sea Ray Boats, Inc., 830 P.2d 236, 241 (Utah 1992) (defendant owes duty of care, and is liable for injuries, to one whose injuries are the foreseeable result of his carelessness). We determine it was not foreseeable that plaintiff, an adult, experienced hiker, wearing a pack he knew was unsuitable, would strike out after the guides in an attempt to catch up with them. The reasonableness of this position is borne out by plaintiff's own statement that he had intended to tell the guides, when he caught up with them, that he questioned the advisability of hiking in the dark. Aplt.App. doc. 10, at 99.
 
 
 22
 Therefore, we conclude plaintiff failed to meet his burden of proving that defendant owed him a legal duty under the misfeasance theory. See Kitchen v. Cal Gas Co., 821 P.2d 458, 461 (Utah Ct.App.1991) (plaintiff has burden to establish that defendant owed plaintiff a duty), cert. denied, 832 P.2d 476 (Utah 1992). Where there is no duty, there can be no negligence. Clover v. Snowbird Ski Resort, 808 P.2d 1037, 1046 (Utah 1991). Accordingly, we also affirm the summary judgment in defendant's favor on the misfeasance claim.
 
 
 23
 The judgment of the United States District Court for the District of Utah is AFFIRMED.
 
 
 24
 EBEL, Circuit Judge, dissenting.
 
 
 25
 I respectfully dissent. In my opinion, the district court erred in granting summary judgment for the defendant based upon its conclusion that there were no facts in the record which could support a finding that the defendant owed the plaintiff a duty of care. In my opinion, there were sufficient facts in the record to create a genuine dispute over whether the defendant may have undertaken a contractual duty of care. Furthermore, I believe that a duty arose under the facts in this case, because the plaintiff's injuries were a foreseeable result of the defendant's actions. Accordingly, I would reverse the order of the district court and remand for trial.
 
 
 26
 Contractual relations can give rise to a duty of care. DCR, Inc. v. Peak Alarm Co., 663 P.2d 433, 435 (Utah 1983) ("contractual relationships for the performance of services impose on each of the contracting parties a general duty of due care toward the other, apart from the specific obligations expressed in the contract itself"). Under Utah law, whether a contract exists is a question of fact to be determined by the jury. Johnson v. Morton Thiokol, Inc., 818 P.2d 997, 1001 (Utah 1991); O'Hara v. Hall, 628 P.2d 1289, 1291 (Utah 1981).
 
 
 27
 Although I agree that a referral contract between the plaintiff and defendant never was formed, it seems to me that there are sufficient facts in the record to support a finding that the parties may have created a separate contract whereby the plaintiff would evaluate the defendant's program and the defendant would allow the plaintiff to visit and participate in the program, to pay certain of plaintiff's expenses, to provide proper equipment, and to provide proper guides and supervision during the program. Successful completion of the first contract may have been a predicate before the parties would have proceeded to enter into a second contract calling for a referral relationship. However, that does not negate the possibility that an exploratory contract was formed. If such a contract was formed, it could, explicitly or implicitly, give rise to a duty of care that the defendant may have breached. Because I feel that there are sufficient facts on the record to support a finding that a contract was formed, I would find that the district court erred when it found as a matter of law that no contractual duty of care existed.
 
 
 28
 Second, as the majority recognizes, there is a duty under Utah law not to create an unreasonable risk of foreseeable and proximate injury to another in the course of one's conduct. Retherford v. AT & T Communications, 844 P.2d 949 (Utah 1992). The existence of this duty is a question of law. Ferree v. State, 784 P.2d 149, 151 (Utah 1989). I believe that the facts in the record in this case establish that the injury to the plaintiff was sufficiently foreseeable that it gave rise to a duty of care from the defendant to the plaintiff. It is reasonably foreseeable, if not likely, that when plaintiff was taken to a remote and rugged area where he had never been before, and when he and the other young and inexperienced participants were abruptly and unexpectedly left by their guides in dusk or darkness, that the plaintiff would attempt to follow them. That an injury might result from attempting to catch up to the guides in such rough terrain under the anxiety and haste occasioned by the circumstances is supported by the fact that the plaintiff was participating in the "impact phase" of a program that was designed to foster personal growth and development through challenging physical activities.
 
 
 29
 The precise injury and the particular way in which it occurs need not be foreseeable. Rather, it only needs to be reasonably foreseeable that the defendant's activities might proximately cause the plaintiff's injuries. Darrington v. Wade, 812 P.2d 452, 459 (Utah Ct.App.1991). Under the facts of this case, I would find that the plaintiff's injuries were a proximate and foreseeable result of the defendant's actions, and accordingly, that a duty existed.
 
 
 30
 For the foregoing reasons, I respectfully dissent.
 
 
 
 *
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 We do not agree with defendant that plaintiff failed to raise the misfeasance theory in the district court. In his complaint and his memorandum in opposition to summary judgment, plaintiff claims defendant's direct actions caused his injuries
 
 
 [2]
 Plaintiff claims the following circumstances established a contract between him and defendant: (1) defendant invited plaintiff to visit and evaluate its wilderness facilities, (2) defendant promised to pay plaintiff's expenses while he was in Utah, (3) defendant promised to provide the proper equipment to plaintiff for the planned activities, (4) a principal in the defendant organization promised to accompany plaintiff on his visit, (5) plaintiff promised to evaluate defendant's program and provide suggestions for improvement, and (6) plaintiff promised to discuss his experience with Mr. Croke "so that the negotiations between Aspen and Mr. Croke could go forward." Aplt.'s Br. at 13. We also note plaintiff's deposition statement about negotiations between him and defendant and what he would receive "if [plaintiff and defendant] had reached an agreement about what [defendant] needed in terms of developing a chemical dependency track." Aplt.App., Ex. 10 at 109